Good morning, Your Honors. My name is Carl Gunn. I'm from the Federal Public Center in Los Angeles, and I represent Mr. Rojas. There are two issues in this case, as the Court knows. The first is a question of pure statutory interpretation, whether certain statutory language in 18 U.S.C. 1791 applies to an object whose nature as a factual matter is undisputed. The second issue is whether raising that question of pure statutory interpretation and seeking conviction on a lesser-included offense can be a basis for denying acceptance of responsibility. If it's all right with the Court, I'll address the first question first, but I'd like to note that the nature of the argument on that question really illustrates how and why it shouldn't be a bar to credit for acceptance of responsibility. The issue is about the meaning of the word, quote, weapon, unquote, in Section 1791. The statute applies to three things that matter for our purposes here. One is a, quote, weapon, unquote. The other is or are objects, quote, designed to be used as a weapon, unquote. The third is objects that are, quote, intended to be used, unquote, as a weapon. It does matter which of those provisions a particular object comes under because specific intent to use the object as a weapon is required for the second and third provisions, but not the first. The question, therefore, isn't whether an improvised shank is covered by some part of the statute. It's whether it's covered by the first provision that doesn't require specific intent or the second provision that does. The line we're arguing for is a line between things that are originally manufactured as a weapon or things that are originally manufactured as something else and then modified in some fashion or simply intended to be used in some fashion. Go ahead. It doesn't have to be manufactured, does it? I mean, it could be, we'll say, custom-made. Well, I guess when I use the word manufactured, I think Your Honor's probably right. I think a small businessman with a little shop along a road would – so when I say manufactured, I think I'm talking about made in – maybe I should be using the word made. Well, then, Mr. Gunn, let's take it to the next step. Suppose an inmate goes to the machine shop in the prison and self-manufactures a zip gun. There's no question that's a weapon, is there? Probably not, Your Honor. I'm not sure that – there's no question that it's covered by the statute one way or the other. No, there's no question it's a weapon. I'm sorry. There's no question it's a weapon as opposed to merely an instrument intended to be used as a weapon. I think that's probably correct. Because it has no other use. Well, I don't think it's a question of whether it has no other use, but a question of whether when you took the raw materials and put it together, that was the purpose of it. Well, what I'm trying to obviously get at is, you know, this is maybe a line-drawing exercise, right, and working to draw a rational line that's, you know, objectively employable in the context of a jury instruction, right, in this kind of case. I don't think manufacturing does it, is what I'm saying. Well, I guess I think the word manufacturing would apply to the Court's example that the Court just gave, frankly. Well, then you have to define manufacturing. Correct. And maybe a better word would be made from raw materials or something like that. But I think — Well, everything is made from raw materials. Well, this shank is made from a raw material, isn't it? Correct. Well, I think this shank was basically just a sharp piece of metal. And I think just having a sharp — What a knife is? I'm sorry? Isn't that what a knife is, a sharp piece of metal? Well, a knife starts out as a — Raw material. It starts out as, I guess, an unsharp piece of metal and gets made into a sharp piece of metal with a specific idea that that's going to be a weapon. But once it comes into its possession in that state, it's a weapon. I'm sorry, say that again. If it was — by the time the prisoner has it in his hands and it's a Bowie knife, it's a weapon, right? Correct. Even though it started out as a piece of metal that needed to be shaped. Correct. Once he gets it, gets a shank that's wrapped, the handle is wrapped, the blade is sharpened, it's got a sharp point, the difference is what? Well, the difference, Your Honor, is I think the line should be drawn. And I think the reason it makes the line — it makes sense to draw the line as weapons being things that were originally made from raw materials that had no other use to be something — Well, see, you're in a quicksand there because — I'm in a line drawing situation. No, it's quicksand if you start selling materials that have no other use. Because, in fact, you know, metal isn't produced out of nothing. And a blade doesn't just show up in a knife maker's — a Bowie knife maker's shop. It's got, you know, big sheets of steel. Agreed. So, you know, those sheets of steel could have been sold to create Kevlar vests, you know, metal inserts in Kevlar vests. I don't know. It could have been all sorts of things. I think what happens is the line drawing problem comes up here because of the second reason I've advanced in terms of my interpretation. And that is the statute also includes the clause designed to be used as a weapon. Can I ask you — I don't want to — but time is running. I do want to just see if I can get a clarification. Let's suppose that the statute is intended to mean that if you've got in your possession something that's obviously a weapon, it's a weapon. But if it's not clear, and we have the example of the knee brace that was jiggled around and really converted, that that's what the statute was intended to pick up. Not just weapons, but anything else that maybe couldn't be called a weapon, obviously, but clearly if you could prove the intent of the prisoner either to use it or to use it for that or for escape, then that's what Congress is intending to pick up. I agree, Your Honor, that that distinguishes between weapon and intended to be used as a weapon. And if those were the only two clauses in the statute, that might be a reasonable way to draw the line. The problem is you have this middle clause that's designed to be used as a weapon. And somehow you have to draw a line that makes that not superfluous. And it's not just a stylistic matter because where you draw that line is going to affect whether or not specific intent needs to be proven. And if you make those weapon and designed to be used as a weapon completely overlapping, you're basically letting the government eliminate an element by saying we're going to charge it one way instead of the other. So I think you have to draw a weapon a little more narrowly than you perhaps could draw it in order to make the designed to be used clause not superfluous. And, in fact, I think that was the question that came into my mind that originally made me think of this argument, is if you're going to read weapon as just anything that's obviously a weapon, then what does it mean, what's something that's designed to be used as a weapon and not a weapon? The government gives the example of five pencils bound together, but I don't think five pencils bound together have any alternative use. They're just as obviously a weapon as these sharp pieces of metal. Same with a rock that's had its edges sharpened. There is a legislative history I point to. It's not the most extensive legislative history in the world. It is the same legislative history that was relied on by this Court in Rodriguez, and they said a homemade prison knife or prison-made knife was intended to be used as a weapon, not a weapon. So I think the defense is that. Maybe I can move on to the acceptance of responsibility argument. The Court would address the — I think it's the government. One of you brought up Daychild in the 28J letter. Yes, Your Honor. Daychild, I think, is distinguishable for a couple of reasons, and I submitted a responsive 28J letter, which I hope the Court got. We received it. All right. Daychild, Your Honor, first of all, the defendant there didn't have a two-hour bench trial with two witnesses. The defendant there had a complete jury trial. Second, it's not crystal clear to me from the facts, but it appears that the defendants in that case testified. Second, it appears that the jury made a closing argument to the jury — I'm sorry, the attorney made a closing argument to the jury, and that was presumably fact-based, since it's facts that you argue to a jury, not legal interpretations. In the words of the opinion, and I'm quoting here, he accepted, quote, only part of the facts alleged, unquote. Do you have a page reference there? Or not? I don't want to take your time. I don't, Your Honor. All right. Go ahead. I believe it's in my 28J letter. Go ahead. It's the same language I quoted there. And in particular, he, quote, denied it could function as a machine gun, unquote. I think that only accepting part of the facts and that affirmatively denying it was a machine gun have to be crucial to that opinion, because we know the guidelines themselves in Application Note 2 say you can do what I would submit is exactly what I did here, go to trial and challenge the applicability of a particular statutory language to the facts of the case. That is precisely what was done here. I mean, if you look at my argument that I just went through with you, what do I argue? Classic principles of statutory interpretation. What about looking at the elements of the crime? I looked at those two stipulations you referenced in your brief. And in no place in there did you ever stipulate the possession of the object. You stipulated that they would be admissible, but you did not stipulate that this man possessed those objects. Correct, Your Honor. But under the Application Note, there's nothing that requires a defendant to affirmatively stipulate to every element. The real question is whether the defendant is challenging those elements. And if you look through the record of this trial, there is nowhere at any point, and it couldn't have been done. The judge said you were challenging the knowing part of the possession. I don't think the judge said that so clearly, Your Honor, especially when I got. What's the standard of review? In other words, on what basis do we review the district court's decision to deny this suggestion? It depends on whether his ruling was based on a legal interpretation of the acceptance of responsibility guideline or whether it was based on factual findings. I think you have to look at the reasons the district court denied acceptance of responsibility here. You're saying it's a mixed question? What I'm saying, Your Honor, is it depends on the reason he denied it. It's one or the other, or it could be mixed. Our cases say it's reviewed for clear error. No, Your Honor. Actually, if you look at the McKittrick case, and I believe the LaPierre case, I know the McKittrick case, and I think the Watt case that I cite in my standard of review section on that issue, they basically say that if the ruling was based on a legal interpretation of the guideline, then it's de novo. The other way of looking at it is it's inherently an abuse of discretion if it's based on an erroneous interpretation of the law. I would like to note the bottom line reason the district court denied credit for acceptance of responsibility was this. He said that he had to, quote, go through the record and make a finding that this object was, it wasn't a rubber gasket, it was a sharp-pointed object that was heavy and long. That was the fundamental reason he denied acceptance of responsibility. The problem is that begs the question, which is whether my defense about it not being a weapon was based on arguing it was a rubber gasket or whether it was based on arguing that, yeah, it's a sharp metal object that's heavy and long, but that's not a weapon under the statutory meaning. And if you look at my argument, it was the latter. The judge did mention my cross-examination, Your Honor, and I went at some length into how and why. I don't think you can infer a defense from open-ended questions on cross-examination. But frankly, if you look at excerpt pages, I believe it's 158 to 159. But the judge heard that. In other words, the judge heard your cross-examination, heard the testimony, heard the argument, and denied it partially on the basis of the defense that was raised. I don't think he did that really, Your Honor, after I addressed that with him. If you look at excerpt pages 158 to 59, he basically asked, well, what was the purpose of your cross-examination? And I tried as best I could, frankly, with getting out into a lot of attorney thought product and work product, what the purpose of it was, which was not knowledge. And at the end of that, he didn't say, I don't believe you, or I find that you're not telling me the truth, or I find that's not. He didn't really have to. What he did was deny the adjustment. Right. But I think he denied it, and that was because he was denying it based on the other reason. He was denying. No. Well, I think the cases say that we approach this finding deferentially, no matter however you want to define it. The district judge is there. He hears the evidence. He hears the argument. And he can tell, the theory is, that whether there's been an acceptance of responsibility. Your Honor. And here he said no. Your Honor, the two cases I'd refer the Court to were United States v. McKittrick and United States v. LaPierre, which I cite at 19 of my reply brief. In both those cases, the Court decided that, well, it's not crystal clear why the district court denied it. And we're concerned that it might have had something to do with the defendant raising what was really a legal defense. That's certainly the case in McKittrick. And we, therefore, are going to remand it for reconsideration. I think that's at the very least what you need to do here in light of the fact that he did not clearly reject what I said about the cross-examination and in light of the fact that his main point was that he had to go through the record and make a finding that it wasn't a rubber gasket and was a heavy metal object. All right, Mr. Kennedy. You're way over your time, but we'll give you a minute for rebuttal, all right? Okay. I appreciate that, Your Honor. Thank you. All right, a chair from the government. May it please the Court. Eric Silver on behalf of the United States. Defendant's limitation on the term weapon in 18 United States Code section 1791 is supported by neither the wording of the statute nor the purpose of that provision. Although, originally, you charged it under a different clause. So that suggests even the government wasn't exactly sure where it fit. Well, I think the problem here is that argument about that wasn't raised in the district court's decision. I know it wasn't, but, you know, it's part of the record. The fact is. Well, but there was no explanation in the record because it wasn't raised below about why the government made that decision. I can't report. It doesn't need explanation. It's obvious. You have a lesser burden of proof. You don't have to prove intent. I think that's right. And, in fact, that's the point of Rodriguez was that if the government proves that it's a weapon, then it doesn't have to prove intent. But if it relies on the design to be used for a weapon or intended to be used as a weapon clause, the government does have to prove intent. Regardless, you know, to me, the crucial issue is how do you interpret this statute in some rational way that doesn't make the design clause superfluous? Well, I think, first, the district court here correctly looked at the meaning of the term weapon and noted under Webster's New Riverside Dictionary that it's any of a weapon is used in all three clauses. So that doesn't do any good. It's not helpful at all. Well, at least it suggested that it was the nature of the instrument itself. No. If you just go on that basis, then, you know, of course, every weapon is designed to prove its right, is designed to be used as a weapon, isn't it? That's right. And I think why it doesn't. So it doesn't help you at all. I think we noted in our brief that there's inherent tension between the two clauses in the statute because. Of course. But you still have to, you know, try to make sense of it and try to give some meaning to that second clause. And how do you do that? We believe our argument about that it's the nature of the object that defines it as a weapon under the first clause gives meaning to both clauses. As we indicated in our brief and below, we think, for example, there's some items like knives, like a bow and arrow set, I think like brass knuckles, that are intrinsically or necessarily weapons. They serve no other purpose. I think an example of something that would not be intrinsically a weapon is the item that was at issue in Rodriguez itself, which was a piece of metal from a knee brace. It was 9 inches long, had two prongs, and had a piece of cloth taped to it. It's not apparent from just hearing the description of that item that it is a weapon. And the Court in that case, although it accepted the government could. Well, who is supposed to make that decision as to whether it's a weapon or something designed as a weapon? The government at the charging stage or the jury? I think under Rodriguez, it's the jury that has to make that decision, although Rodriguez did indicate that the Court could instruct the jury as a matter of law. Here, I don't think it ultimately matters because the judge was sitting. If it's the jury's function, then, is it an error just to charge a weapon because the element of intent is not put before the fact finder in case the fact finder does find it should come under the second clause? Well, I think in that circumstance, the government risks that if it doesn't prove that it's a weapon, then the result may be acquittal. I think the government could charge both in the same indictment, but the problem is if the government charges both clauses, then it will have to prove intent at trial, which is not what the Court indicated it had to do in Rodriguez, because simply by charging the other clause of the statute, it's going to be required to do that. And I think our argument is that there are certain objects that are intrinsically or necessarily weapons, and among those are knives. In fact, I think this Court in Riggins has noted that under 18 United States Code section 113. It's dealt with items that, in that case, that statute deals with what are dangerous weapons, but this Court has noted that there are items that are weapons per se, and among those this Court had are knives, and then there's other items. And I think the tension that's reflected between these two provisions is exactly that. There's the items that are themselves weapons, and then there are the items that aren't necessarily weapons that you would want to know more information about, including the intent of the defendant. And I think that's what the second clause is designed to embrace. And I think it's a bit of a difference between the second clause and the third clause. Well, I actually think that that's all one clause based on the textually how the statute reads. I think it's weapon and then it's designed and intended to be used as weapon are one clause, although two methods of proving that clause. And I think Rodriguez suggests that by separating the intent by those two clauses, saying that weapon requires or does not require proof of intent, whereas the second clause does. I do note that there's inherent overlap between items that are intended to be used for a weapon and designed to be used as a weapon. And that's particularly true since in Rodriguez this Court held that both parts of that require proof of specific intent. I think it would be very hard to have an item that was designed to be used as a weapon that at the same time was not intended to be used as a weapon. But that doesn't suggest that there should be a limitation on the term weapon itself that isn't in the statute. And here we offered what we believe is a functional and workable task, and it also relates to the purpose of the statute. As we note in our brief, this is a prison statute, and limiting the term weapon to professionally manufactured or originally manufactured items means that it applies to just those types of items that aren't ordinarily found in prisons. And Congress ---- Kennedy. Can I come back and ask you on this design intent dichotomy? Let's suppose that the evidence is clear that the prisoner possessed something that he did not intend to use as a weapon or for purposes of escape. Nonetheless, it was clear that it could be. Therefore, and it wasn't inherently an object, it wasn't a knife or a gun, but it was like the knee brace in Rodriguez, and the government justified its prosecution on the ground that, well, even if he didn't intend to use it, it was designed, whoever shaped it before he came into possession of it, had it. And therefore, that's the kind of object we don't want prisoners having. Would you then say that the line we should be drawing between the first clause of weapon and the second combined clause, as I understand your argument, is or isn't intent? I don't think that that would change the argument here. It would, I guess, in Rodriguez, this Court indicated that specific intent is required for the second clause, but didn't specifically say specific intent of what. And I think what your question goes to is what that would have to be intent for, whether it's intent to use the item as a weapon or whether it's intent, the item was intended to be designed as a weapon. But whose intent on the design clause, then? Well, I think, I think you have to go back and look at subsection A-2, which defines the action of the defendant, because there's multiple actions. Section D, which deals with the weapon clause, defines the item, not the action. So a defendant can possess or make a weapon. Right. That's what I'm saying. So he possesses something that he didn't design, but somebody did, and therefore, where's the intent? It's not his intent, right? Well, I think in that circumstance, the argument if that, in that circumstance would be that the intent goes to the weapon itself, not the defendant in that circumstance, I think, because possession, making are two different methods of proving a violation of 1791. So it's not necessary the defendant made the item under that circumstance. I understand that. That's why I'm posing the hypothetical. I think in that circumstance, when the defendant possessed an item that was intentionally designed as a weapon, I think that would be the specific intent that is going, that this Court mentioned in Rodriguez, although, again, this Court didn't define it there. But I think that really doesn't define the separation line between what's a weapon under the first clause and what falls within the second clause, because, again, it's the nature of the object that makes it fall within the first clause itself. It's the inherent nature. That, I understand your argument. It's what the problem, and I think Judge Tasheem was zeroing in on that. How do you adopt that reading without making at least the design aspect of the alternate approach superfluous? But I think that the district court at ER 99 to 100 gave an example of a rock, which we thought was appropriate, that you could design a rock. You could make a sharper edge. Well, I could. Right. I could, as a prisoner, design a rock. But let's suppose I've got a rock collection in my cell, and one of them has a very pointy end on it. I didn't design it. I picked it up. Well, I've You could prove I intended to use it. That would pick up the intent clause. But now you're saying it's not my intent as the prisoner. All that the government has to prove is that someone designed it for use as a weapon or for purposes of escape. I think that's right, and I think, although it may not apply in every particular case, all the prongs of the statute, our point is that there can be a rock that is designed to be used as a weapon, which you look at it, you can't be sure. It's not a dagger-like item. I mean, it's not like the items in this case. But it could have been designed to be used as a weapon by this defendant. Maybe it wasn't. And in that circumstance, you would go under the designed to be used as a weapon clause. Again, your example gives another alternative, which is simply something that is a rock that's picked up and it's unclear whether the defendant himself or herself or somebody else had sharpened it. I think in that circumstance, obviously, the government could prove that it was intended to be used as a weapon. But if the government, in fact, proved someone designed it to be used as a weapon and intentionally did so, I think it would fall under the second clause. But I think under either of those interpretations, nothing renders the first clause superfluous. I know that. No, nobody's arguing the first clause is superfluous. It's the second clause that we're looking at. Well, see, I disagree. I mean, I think we respectfully disagree. I think defendant's argument is that not limiting the term weapon to professionally made or originally manufactured items would render the first clause superfluous. What are we talking about, the first clause? The weapons clause. I thought he was saying design clause would become superfluous. Well, in any event. Let me ask this question. You think it's a sensible interpretation of the statute to say, well, government can't split these two apart and has to charge that whole thing as one charge? In other words, allege that the defendant possessed a prohibited object, namely a weapon or an object designed to be used as a weapon and leave it to the jury to decide which it was under some kind of interrogatory. I would think that's inconsistent with Rodriguez, which indicates the government does not have to prove intent when it's a weapon. I know that, but you still wouldn't have to. If the jury finds it's a weapon and it's as opposed to the other object, then, you know, the instruction would say intent, proof of intent is not necessary. Well, I mean, I think in that circumstance, though, in every case, then we'd be required to prove intent at trial because it would be an alternative basis necessarily in the case. And I also note there's other things in 1791, the D clause. Besides weapons, there's, you know, controlled substances, and the government doesn't have to allege all the alternatives there. There are alternative ways of proving 1791. And because they require a different element, I think it is appropriate for the government to rely solely on the weapon clause to charge those. And I would like to point out, Judge Fischer, I was mistaken. The defendant is arguing it's designed to be used for a weapon clause. It's superfluous in this case, not the weapon clause. And I'm sorry. All right. You're way over your time, but why don't you give us about a minute on Dachau? I think what's the point in Dachau was that if the defendant goes to trial and challenges his guilt, that does not compel the district court to afford him the adjustment. And in that case, it was putting the government to its burden of proof. And I disagree with defense counsel's view of the case. The issue there was whether factually the defendant possessed a machine gun. And he stipulated that he possessed the gun at issue. He at least agreed to that he possessed the gun at issue. He agreed that he bore the hole in the gun. And the factual dispute in that case was whether it was a machine gun. But the question was whether the drilling of the hole would make it function as a machine gun. He wasn't disputing that if he lost on that, then it would be a machine gun. In this case, he's saying, look, I've got this shank, but it isn't a weapon. It doesn't meet the legal question. And we're bouncing back and forth here trying to figure out which clause the government charged it under, one to begin with, for whatever reason, then switched itself. The statute, I mean, I think we've engaged, all of us, in a good faith intellectual exercise, trying to figure out if weapon and intended or designed to be a weapon are legally different. And if so, how? And why isn't this? How else would he address the legal question other than by saying, you know, trying the case as he did? Well, I think, first, he could have stipulated to the other elements of the offense, which he did not do in this case. The Seventh Circuit in Hicks has noted that if you want to raise only a legal challenge, you need to remove the other elements from the offense and make it only a legal challenge. The government was put to its burden of proof in proving the defendant possessed the shank to prove that the defendant knowingly possessed the shank and to prove that this was a prison-made knife. It wasn't sufficient that this was simply a piece of metal. And by failing to remove those elements of the offense from the trial in this case, the district court does not clearly err by denying the adjustment. And I think that's important to look at. On top of that, the defendant affirmatively challenged, as we indicated in our brief,  The issue of whether this was a weapon involved both factual and legal components. As we noted at ER 110, the defendant argued this. He argued there wasn't reasonable doubt or there was, excuse me, was reasonable doubt that these items had been made into a weapon. And this was during the Rule 29 discussion in this case. So, I mean, I don't think it's actually factually correct to say that this was simply a legal challenge at trial, and I think the district court who observed this found that. I think it's also important to note that the Court ruled at ER 156 that the defendant made in part a factual challenge to knowledge. At ER 158, the Court clarified that the factual challenge involved the cross-examination in this case. I think it is correct, as defense counsel indicated, that after that there was some further discussion, which the district court eventually cut the defendant off and simply said, thank you. But as this Court indicated in Moorbacher, the district court's not required to make findings on acceptance of responsibility. And the district court, although it did make findings here, they were sufficient. The district court was not required to engage in a lengthy discussion beyond what it did with defense counsel on this point. So I think the record was clear. And I actually think this is no different. Kennedy. Okay. Okay. I think we have your point. You're 5 minutes over now, right? Thank you. Without the government's submission, Your Honor. Thank you. All right. A brief rebuttal, right? On this issue of whether I was disputing knowledge, the court can look for the record itself. I would just refer it to excerpt of record 159. I don't think the court cut me off. The court let me give my explanation. The court then said, thank you. I think that at least raises doubts about whether the court was relying on some idea that I had argued knowledge. And frankly, I don't think the court could have done that. I don't think the court can take open-ended cross-examination questions with no argument whatsoever. And call those, call that a factual dispute. As I've discussed in more detail in my brief. Why couldn't you have just stipulated, as he says, to all of the elements and just served it up as a pure question of law? I probably, well, I certainly couldn't have stipulated the weapon because that incorporates both. I don't mean that. But I suppose I could have stipulated the knowledge. I could have stipulated the possession. Frankly, it seemed crystal clear from the evidence that those things were going to be obvious. The guard finds it on his person. I didn't visualize any dispute about that. And under the case law. I'm asking you why in the sense of. Right. Your legal reasoning. Basically, there was no reason why you couldn't. Correct. But I don't think the application notes to the guidelines require an affirmative stipulation. They just require that there not be a, quote, denial, unquote. There was certainly no, quote, denial, unquote, here. It was not. The district court's view was it didn't. It was sufficient if this was a sharp piece of metal, I would note. I believe in Excerpt of Record 151, I pointed out that it was totally irrelevant whether it had been affirmatively sharpened in the institution. And the district court responded by saying that's true. The other bottom line is neither of those were reasons the district court gave for denying the acceptance of responsibility, at least in any clear fashion. The reason it gave was the one I quoted earlier, that it had to make a finding that this wasn't a rubber gasket, but was a long, heavy, sharp piece of metal. The last point I wanted to make, Your Honor, relates to the substantive argument. You know, you talk about things like the nature of the object, whether it's intrinsically a weapon, the inherent nature. I suppose these pieces of metal looked a little bit more like something intended to be a weapon than some other things. On the other hand, they probably were less obviously so than other things. To some extent, they looked like tent stakes. They certainly weren't, I don't think, as obvious as a zip gun or a dagger manufactured by a company or a sword or something like that. So if you're going to start going with nature of the object or inherent nature or intrinsically weapons, these were somewhere in the middle, not clearly on the obvious side of the spectrum. I think I took more than the one minute the Court was getting. Thank you. Thank you. We thank both counsel for a very fine argument. And this case is now submitted for decision. Next case on the calendar is Durand versus Castro.
judges: T.G. Nelson, Tashima, Fisher